```
Approved:   _____
            KIERSTEN A. FLETCHER
            Assistant United States Attorney

Before:     THE HONORABLE BARBARA C. MOSES
            United States Magistrate Judge
            Southern District of New York
```

**21 MAG 7926**

```
- - - - - - - - - - - - - - - x
                               :   SEALED COMPLAINT
UNITED STATES OF AMERICA       :
                               :   Violations of
                               :   15 U.S.C. §§ 80b-6 and
        - v. -                 :   80b-17
                               :
MARTIN RUIZ,                   :   COUNTY OF OFFENSES:
                               :   New York
            Defendant.         :
                               :
- - - - - - - - - - - - - - - x
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

   JOHN J. RODRIGUEZ, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security – Homeland Security Investigations and charges as follows:

### COUNT ONE
### (Investment Adviser Fraud)

   1.   From at least in or about March 2011 through in or about the present, in the Southern District of New York and elsewhere, MARTIN RUIZ, the defendant, acting as an investment adviser, willfully and knowingly, by use of the mails and of other means and instrumentalities of interstate commerce, directly and indirectly (a) employed devices, schemes, and artifices to defraud clients and prospective clients; (b) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients; and (c) engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative, to wit, RUIZ, who was engaged to provide investment advice to clients of his firm Carter Bain Wealth Management, breached his fiduciary duties and misled clients by advising them to make investments in an entity RUIZ controlled,

and then misappropriating client funds for his own benefit.

(Title 15, United States Code, Sections 80b-6 and 80b-17;
Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I have been a Special Agent with the Department of Homeland Security – Homeland Security Investigations ("HSI") for approximately 4 years. I am currently assigned to an HSI group focused on investigating complex white-collar crimes, including investment adviser fraud, securities fraud, commodities fraud, wire fraud, and other financial crimes. As part of my work with HSI, I have received training regarding ways in which these crimes are perpetrated, have participated in numerous investigations of such offenses, and have made and participated in arrests of individuals who have committed such offenses.

3. HSI is currently investigating MARTIN RUIZ, the defendant, and his fraudulent activities in connection with his role advising investment advisory clients as the president and sole owner of Carter Bain Wealth Management, an investment adviser firm registered with the Securities and Exchange Commission ("SEC"). The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during the course of this investigation, directly or indirectly, from other sources, including: (a) conversations with, and reports prepared by, other law enforcement agents; (b) information and documents obtained from non-law enforcement witnesses, including investment advisory clients; (c) documents and information obtained from banks and other financial institutions; (d) documents and information collected by the SEC in connection with a parallel SEC investigation of RUIZ; and (e) a report of the financial analysis conducted by an accountant employed by the SEC (the "Accountant Analysis"). Because this Complaint is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Duties of an Investment Adviser

4. Based on my participation in this investigation, as well as the sources listed in paragraph 3 *supra*, I have learned the following, in substance and in part:

    a. Title 15, United States Code, Section 80b-2 defines the term "investment adviser" as used in the Investment Advisers Act of 1940 to mean, in substance and in part, "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability in, purchasing or selling securities, or who, for compensation and as part of a regular business."

    b. An investment adviser has fiduciary duties to his or her investment advisery clients, which include, among other things, an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading clients and engaging in self-dealing.

### The Defendant and his Investment Advisery Firm

    c. MARTIN RUIZ, the defendant, is a 45-year old citizen of the United States and resident of New York, New York. Since at least 2004, Ruiz has been registered as an investment adviser with the SEC.

    d. Carter Bain Wealth Management ("CBWM") is an investment adviser based in New Mexico and registered with the SEC and state securities regulators for New Mexico and Texas. At all times relevant to this Complaint, RUIZ was the president and sole owner or CBWM.

    e. In reports publicly filed with the SEC, and in the standard advisery agreement (the "Advisery Agreement") between CBWM and its advisery clients, CBWM describes its services, in substance and in part, as "investment management services" rendered in exchange for management fees.

    f. The Advisery Agreement further states that, apart from management fees, CBWM "shall have no authority hereunder to take or have possession of any assets in the account or to direct delivery of any securities or payment of any funds held in the account to itself or to direct any disposition of such securities or funds except to the client."

### The RAM Fund

g. RAM Fund LP ("RAM Fund") is a limited partnership organized under the laws of Nevada. Corporate records for RAM Fund list RUIZ as its General Partner.

### Overview of the Scheme to Defraud

h. From at least in or about March 2011 through in or about the present, RUIZ induced multiple individual investment advisory clients of CBWM, many of whom are elderly, to retain RUIZ and CBWM to provide them with advice concerning how they should invest their retirement savings.

i. While ostensibly acting in his fiduciary capacity as their investment adviser, RUIZ induced more than a dozen such clients to invest more than $10 million in RAM Fund through the purchase of limited partnership interests. RUIZ did not explain to his clients that he controlled RAM Fund.

j. Moreover, despite his fiduciary duty to act in his clients' best interests and avoid self-dealing, MARTIN RUIZ, the defendant, misappropriated more than $8 million of client funds from the RAM Fund, the vast majority of which has been spent on RUIZ's personal expenses, including the purchase of his personal residence and the payment of his personal credit card bills.

### Investment Advisory Clients are Defrauded in Connection With Investing in RAM Fund

5. Based on my participation in this investigation, including my interviews of several clients of CBWM and MARTIN RUIZ, the defendant, (including two such individuals identified hereinafter as "Client-1" and "Client-2"), my review of declarations prepared by Client-1 and Client-2, and the sources listed in paragraph 3 *supra*, I have learned the following, in substance and in part:

a. In or about June 2019, Client-1 agreed to have RUIZ, through CBWM, advise Client-1 concerning how to invest Client-1's retirement savings. At the time, Client-1 told RUIZ that Client-1 wanted the funds invested in "safe investments."

b. At around the same time, RUIZ directed Client-1 to open an account with a self-directed retirement plan custodian (the "Plan Custodian").

Case 1:21-mj-07926-UA   Document 1   Filed 08/11/21   Page 5 of 9

c. In or about August 2019, RUIZ, acting in his capacity as Client-1's investment advisor, asked Client-1 to sign a letter authorizing the Plan Custodian to purchase $100,000 worth of shares in RAM Fund.

d. Consistent with Client-1's prior directive that RUIZ should only invest Client-1's money in a "safe investment," Client-1 understood that the investment in RAM Fund would be a "safe investment."

e. Client-1 does not recall ever being told that RUIZ was the owner or general partner of RAM Fund.

f. Client-1 would not have invested with CBWM or RAM Fund if Client-1 had been told that RAM Fund did not make legitimate investments or if Client-1 understood that RUIZ intended to use Client-1's funds for his own personal expenses.

g. In or about the spring of 2019, Client-2 met with RUIZ to discuss having CBWM and RUIZ advise Client-2 on investing his retirement savings. During those discussions, RUIZ told Client-2 that CBWM would have discretionary authority to invest in stocks, bonds, and alternative investments on behalf of Client-2.

h. In or about May 2019, CBWM directed Client-2 to open an account with the Plan Custodian.

i. In or about June 2019, a CBWM representative asked Client-2 to sign a letter authorizing the Plan Custodian to purchase $200,000 worth of shares in RAM Fund. At the time, RUIZ did not explain to Client-2 that he controlled RAM Fund or that RUIZ would use the funds in RAM Fund to pay for his personal expenses.

j. In or about 2020, Client-2 received a portfolio snapshot from CBWM, which indicated that over 90% of Client-2's money was invested in RAM Fund, which was identified on the snapshot as a "fixed income" investment.

k. In or about June 2020, Client-2 made the decision to withdraw Client-2's funds from CBWM based, in part, on Client-2's concern that CBWM representatives were scrambling for answers when Client-2 asked questions about the type of investments in Client-2's account. Client-2 received a return of retirement funds from CBWM in or about June 2020.

5

6. Based on my participation in this investigation, including my interviews of a third investment advisory client of MARTIN RUIZ, the defendant, ("Client-3"), interviews of Client-3's family member (the "Family Member"), as well as the sources listed in paragraph 3 *supra,* I have learned the following, in substance and in part:

   a. RUIZ lived in New York, New York, but maintained family and personal contacts in New Mexico, where Client-3 resides. Client-3 had a longstanding relationship with RUIZ and, as a result, invested approximately $375,000 in retirement savings with CBWM over the years.

   b. In or about March 2013, at RUIZ's urging, Client-3 agreed to deposit a portion of Client-3's retirement funds with the Plan Custodian and to invest those funds in RAM Fund, with the funds to be managed by CBWM and RUIZ.

   c. In or about 2020, Client-3 withdrew approximately $22,000 from the account being managed by CBWM. Following the withdrawal, RUIZ refused to provide Client-3 with the necessary tax forms reflecting the withdrawal and instead provided forms showing only a $9,000 withdrawal.

   d. In or about June 2021, Client-3 (with the Family Member's assistance) asked RUIZ to rollover Client-3's remaining investments managed by CBWM, which Client-3 and the Family Member believed totaled more than $200,000, to a different investment adviser ("Adviser-1"). Adviser-1 also sent CBWM liquidation instructions for Client-3's account.

   e. As of August 10, 2021, Adviser-1 has not received Client-3's funds. In response to the Family Member's request for an explanation for the delay, RUIZ has blamed the Plan Custodian and the COVID-19 pandemic.

   f. On or about August 9, 2021, at the direction of law enforcement, the Family Member recorded a telephone conversation with RUIZ. During the conversation, RUIZ represented to the Family Member that RAM Fund had previously been invested in real estate, that Client-3's investment in RAM Fund was liquidated in June 2021, and that the funds would be transferred to Adviser-1 as soon as possible. In truth and in fact, as described more fully below, virtually all of the funds that were deposited into RAM Fund accounts, including Client-3's

6

money, were misappropriated and used to pay RUIZ's personal expenses.

<u>RUIZ Misappropriates Client Funds</u>

7.  Based on my participation in this investigation, including my review of bank records and the Accountant Analysis, as well as the sources listed in paragraph 3 *supra*, I have learned the following, in substance and in part:

   a.  Beginning in or about April 2014 until in or about April 2021, clients whose funds were managed by CBWM transferred more than $10 million[1] to RAM Fund bank accounts held at Bank of America (the "RAM Bank of America Accounts") and Citibank (the "RAM Citibank Account" and, collectively, the "RAM Accounts"). The roughly $10 million in client funds deposited into the RAM Accounts accounted for more than 98% of the total deposits into the RAM Accounts during this period.

   b.  MARTIN RUIZ, the defendant, is the sole authorized signer on the RAM Accounts.

   c.  Beginning in or about April 2014, years before Client-1 and Client-2 invested in RAM Fund, and continuing through at least in or about April 2021, the RAM Accounts transferred an aggregate amount of approximately $8.8 million to a bank account in the name of Rothschild Magnus Fund, LP (the "RMF Account"). RUIZ is the sole authorized signer on the RMF Account. Transfers from the RAM Accounts constituted more than 96% of the total funds deposited into the RMF Account during this period.

   d.  Between in or about April 2014 and in or about April 2021, the RMF Account transferred approximately $7 million to an account in the name of ISG Capital (the "ISG Account"). RUIZ is the sole authorized signer on the ISG Account. Transfers from the RMF Account accounted for more than 93% of

---

[1] Client funds were transferred to the RAM Accounts either by wire from the Plan Custodian or from the clients' own bank accounts. Payment instructions for several of the Plan Custodian wires indicate certain such wires from the Plan Custodian to the RAM Bank of America Accounts transited through the Southern District of New York. In addition, the RAM Fund Bank of America Accounts were opened at a branch in New York, New York.

7

the total funds deposited into the ISG Account during this period.

        e. Between in or about April 2014 and in or about April 2021, virtually all of the funds in the ISG Account were used to pay RUIZ's personal expenses, including nearly $3 million in personal credit card bills, more than $300,000 in lease payments for RUIZ's New York City apartments, and more than $247,000 in down payment and mortgage payments for RUIZ's New Mexico home. In addition, more than $700,000 in cash withdrawals were made from the ISG Account during this period.

        f. Accordingly, and contrary to RUIZ's representations to his investment advisery clients, as well as his fiduciary duties to those clients, client funds in RAM Fund were largely transferred through a series of other entities to personal accounts controlled by RUIZ, used substantially for his personal use, and not used for investments of any nature.

    8. Based on my participation in this investigation, as well as the sources listed in paragraph 3 *supra*, I have learned that MARTIN RUIZ, the defendant, was interviewed by lawyers with the SEC in or about June 2021. During that interview, RUIZ made multiple statements that are demonstrably false given the evidence set forth above. In particular, RUIZ told the SEC, in substance and in part, the following:

        a. 90% of the RAM Fund investor funds were used to acquire real estate, mostly commercial properties located in the southwest United States, and approximately 10% were used in lending activities.

        b. There was no relationship between RAM Fund, ISG Capital, and the Rothschild Magnus Fund.

        c. RUIZ could not recall RAM Fund sending any funds to the Rothschild Magnus Fund.

WHEREFORE, I respectfully request that an arrest warrant be issued for MARTIN RUIZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
JOHN J. RODRIGUEZ
Special Agent
Department of Homeland Security –
Homeland Security Investigations

Sworn to before me this
11th day of August 2021

_____
THE HONORABLE BARBARA C. MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK